# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**TONI D. DUVALL**                                                                                          **PLAINTIFF**

**V.**                          **CASE NO. 4:22-CV-01233 BSM-JTK**

**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.   Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**II.   Introduction:**

Plaintiff, Toni D. Duvall ("Duvall"), filed applications for disability benefits and supplemental security income on September 14, 2020. (Tr. at 22-33). In the applications, she alleged that her disability began on September 7, 2020. *Id*. The applications were denied initially and upon reconsideration. After conducting a

hearing, an Administrative Law Judge ("ALJ") denied Duvall's claim in a written decision dated November 17, 2021. *Id*. The Appeals Council denied Duvall's request for review of the hearing decision on October 14, 2022. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Duvall has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

**III.   The Commissioner's Decision:**

Duvall was 42 years old on the alleged onset date, and she has a high school education. (Tr. at 32). She has past relevant work as a CNA and cook. *Id*.

The ALJ found that Duvall had not engaged in substantial gainful activity since the alleged onset date of September 7, 2020.[1] (Tr. at 24). The ALJ found, at Step Two, that Duvall has the following severe impairments: degenerative disc disease, obesity, and right foot calcaneal spur. *Id*.

At Step Three, the ALJ determined that Duvall's impairments did not meet or equal a listed impairment.[2] (Tr. at 26). Before proceeding to Step Four, the ALJ

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[2] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

determined that Duvall had the residual functional capacity ("RFC") to perform the full range of work at the light exertional level. (Tr. at 27).

At Step Four, the ALJ found that Duvall was unable to perform any past relevant work. (Tr. at 32-33). At Step Five, the ALJ used the Medical Vocational Guidelines ("Grids") to find that Duvall was not disabled.[3] *Id*.

## IV. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

---

[3] If a claimant can perform all or substantially all of the exertional demands at a given level of exertion, without non exertional restrictions, the ALJ may rely upon the "Grids" to conclude the claimant is disabled. *Id.*; 20 C.F.R. Part 404 Subpt. P, Appx 2; Soc. Sec. Rule 83-11, 83-12, 83-14). In this case, Medical-Vocational Rule 202.21 directed such a finding.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.   Duvall's Arguments on Appeal

Duvall contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) ALJ should have further developed the record; (2) the ALJ erred at Step Two; (3) the ALJ did not properly evaluate Duvall's subjective complaints; and (4) the RFC did not fully incorporate

all of Duvall's credible limitations.

At the outset, the Court notes that Duvall's counsel argues that prior counsel failed to properly develop the record with respect to traumatic brain injury. (Doc. No. 12 at 4-6). She claims that a 2016 brain injury would have prevented Duvall from working in 2020 (although Duvall worked after the alleged brain injury, until 2020). (Tr. at 226, 247).

The hearing in front of the ALJ took place on October 21, 2021, where Duvall's prior counsel was present. (Tr. at 22). The ALJ issued his written decision denying benefits on November 11, 2021. (Tr. at 22-32). Duvall's current counsel became her representative on December 27, 2021. (Tr. at 15-18). Duvall's current counsel asked that the Appeals Council review the ALJ's decision on January 3, 2022; she did not raise issues about a brain injury in that request. (Tr. at 214-215). Duvall's current counsel submitted only one additional record after the hearing: a medical source statement from Duvall's physician that did not mention brain injury, but suggested that Duvall could not work due to back pain. (Tr. at 9-11). The restrictions assigned in this were unsupported by the record, as will be shown below. Duvall's counsel alleges that more records are out there, but she did not submit additional records about brain injury or ask for an additional hearing on that issue.

5

So, her claim that the record was underdeveloped does not convince the Court.[4]

Duvall suffered from a bone spur, but during the relevant time-period, her gait was normal and she could heel-toe walk. (Tr. at 369, 374, 410, 500). She said she was doing better after seeing a podiatrist. (Tr. at 30). Cervical pain was treated conservatively with medication management and injections, which yielded some improvement.[5] (Tr. at 348, 392, 419). As well, cervical MRI revealed only mild injury. (Tr. at 29, 523). Pain management doctors encouraged her to continue normal activities. (Tr. at 602). Indeed, Duvall said that she could prepare meals, attend to personal care, do laundry, drive, and shop in stores.[6] (Tr. at 279-282). She was social and had no problems getting along with others. (Tr. at 283-284).

While Duvall claims that her obesity was not properly considered, in fact, the state agency medical expert noted a BMI of 35 and the ALJ discussed obesity and its effect on Duvall's conditions. (Tr. at 24, 119) The ability to perform a wide variety of daily activities, in and of itself, suggests that obesity was not disabling.

Duvall contends that because she had a brain injury from past domestic abuse

---

[4] While an ALJ has a duty to develop the record, this duty is not never-ending. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

[5] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[6] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

6

in 2016, mental impairments should have been rated as severe at Step Two for the 2020-2022 adjudicated time period.[7] But Duvall worked for four years after the alleged injury, and mental status examinations during the relevant time-period were mostly normal. (Tr. at 348-390). Duvall treated mental impairments conservatively with medications and she did not require specialized psychiatric care. (Tr. at 25, 390, 615). As for migraines, which she alleged stemmed from her brain injury, there is little evidence that she pursued any dedicated treatment for migraines, or that they caused functional restrictions. The ALJ discussed mental impairments, migraines, and the brain injury in his decision (Tr. at 24-25), and he properly relied upon the state agency psychological experts' conclusions that mental impairments were nonsevere. *Id.*; (Tr. at 82, 115).

Moreover, the ALJ properly considered Duvall's subjective complaints.[8] He addressed the nature and extent of her cervical and heel pain and her positive

---

[7] The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); see *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a).

[8] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* (internal citations omitted).

response to treatment (pain management records indicated that she had improved tolerance to activities and improved quality of life). (Tr. at 29, 602). The ALJ also discussed her conservative course of treatment, and her ability to perform daily activities. (Tr. at 24-29). He also analyzed and discussed the medical opinions. *Id*. The ALJ properly considered Duvall's subjective complaints, and no further development of the record was required.

Finally, based on the facts outlined above, the RFC for light work was appropriate.[9] Duvall has not shown that the RFC should have contained non-exertional limitations. The ALJ's reliance upon the Grids at Step Five to find that Duvall was not disabled was proper.

## V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The record was fully developed, the ALJ did not err at Step Two, the ALJ fully considered Duvall's subjective complaints, and the RFC incorporated her credible limitations. The finding that Duvall was not disabled within the meaning of

---

[9] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 25th day of October, 2023.

_____
UNITED STATES MAGISTRATE JUDGE